**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREW BOODOO | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 24-1056 |
| | ) | |
| v. | ) | District Judge Nora Barry Fischer |
| | ) | |
| AMP HOME CARE LLC | ) | |
| *doing business as AMP* | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER
ON MOTIONS IN LIMINE**

**I.    INTRODUCTION**

As noted in this Court's Memorandum Opinion denying Defendant's Motion for Summary Judgment (ECF No. 41), this civil action arises from Plaintiff Andrew Boodoo's ("Plaintiff" or "Boodoo") employment and subsequent termination from Defendant AMP Home Care LLC, doing business as AMP ("Defendant" or "AMP"). Plaintiff alleges religious discrimination, failure to accommodate and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); sexual harassment and retaliation in violation of Title VII (Count II); and religious discrimination, failure to accommodate, sexual harassment and retaliation in violation of the Pennsylvania Human Relations Act ("PHRA") (Count IV). (Amended Complaint, ECF No. 26).

Presently before the Court are the parties' Motions in Limine, their responsive briefings, and supportive exhibits. (ECF Nos. 68-69, 71-72, 77-80). Said motions having been fully briefed, the Court having heard Oral Argument on April 8, 2026, and after having received and reviewed the transcript of Oral Argument (ECF No. 85), the motions will be granted, in part, and denied, in part, as discussed herein.

## II.   FACTUAL HISTORY

The factual history of this litigation has been presented in the parties' prior filings and this Court's Opinion on Summary Judgment (ECF No. 41).  As such, the Court highlights those facts pertinent to the instant Motions in Limine. The subject claims arise from Plaintiff's employment with Defendant AMP, a licensed provider of residential and supportive services for individuals with intellectual disabilities, operating under the oversight of the Commonwealth of Pennsylvania. (ECF No. 41 at 2).  Plaintiff began his employment with AMP in December 2023 as a Team Lead. (*Id.* at 3).  He was assigned to work the 8:00 a.m. to 4:00 p.m. shift, Monday through Friday.  (*Id.*). At AMP's Liberto Site, Plaintiff was responsible for providing services to two adult residents with intellectual disabilities.  (*Id.* at 4).  He was trained on the rights of individuals receiving services, on prevention of neglect, and on procedures related to emergency shift coverage.  (*Id.*).  According to AMP management and other employees, Plaintiff was qualified for his job and performed it well.  (*Id.* at 5).

Plaintiff testified that throughout his employment from early December 2023 until his termination near the end of February 2024, he was the victim of Tarashae Butler's ("Butler") sexual harassment.  (*Id.*).  Butler's sexual comments and conduct were also witnessed by other employees.  (*Id.* at 6).  In response to Butler's sexual advances, Plaintiff told her to stop but she failed to do so.  (*Id.* at 7).  Despite his complaints to management, nothing changed, and Butler's behavior continued.  (*Id.* at 8).

Plaintiff identifies his religion as Santeria.  (*Id.* at 8).  In his religion, a full moon is significant because it is a time to communicate with spirits and provide certain offerings for blessings and release trauma from ancestors.  (*Id.*).  Prior to the events leading to his termination,

2

Plaintiff informed Butler about his religion.  (*Id.*).   These events are described in the Court's

Summary Judgment Opinion as follows:

> On February 23, 2024, Plaintiff was scheduled to work the 8:00 a.m. to 4:00 p.m. shift.  Butler contacted Plaintiff and requested that he work the following shift, which was 4:00 p.m. to 12:00 a.m. . . .  Butler told Plaintiff that if he did not stay and work the 4:00 p.m. to 12:00 a.m. shift, she would no longer give him extra shifts.  Plaintiff initially told Butler he could not do so because he had religious obligations that night.  After Butler kept asking him, he agreed to work the 4:00 p.m. to 12:00 a.m. shift because Defendant was short-staffed.  Plaintiff needed to leave by 12:00 a.m., however, because it was a full moon on February 24, 2024, and he needed to be home to engage in his religious practices . . . .
>
> Throughout the afternoon shift on February 23, 2024, Butler repeatedly reached out to Plaintiff and asked if he could stay and work the 12:00 a.m. to 10:00 a.m. shift, for which he was not scheduled.  Butler then told Plaintiff that she was supposed to work the 12:00 a.m. to 10:00 a.m. shift but that she didn't want to work that shift because she "wanted to get drunk" that night.  During a phone call with Butler at approximately 5:00 p.m. on February 23, 2024, Plaintiff informed Butler that he could not work the overnight shift because of his religious beliefs.  Plaintiff also sent text messages to Butler indicating his inability to work the overnight shift because of his religious obligations.  Butler responded to Plaintiff's text message stating that she was mandating him to stay.  Plaintiff replied that he was going to contact HR or [his supervisor] Ireland.
>
> Plaintiff then reached out to Ireland and explained that he had previously told Butler he could not work the overnight shift "due to religious practices," that his "religious practices conflict with work," and that he had already worked 24-hours straight, including agreeing to help out by working the 4:00 p.m. to 12:00 a.m. shift (at Butler's request), despite that he was not scheduled for the shift.  Ireland responded that he should not be contacting her, that he was acting inappropriately and that, if he leaves, she will contact the police.  In addition to sending her text messages, Plaintiff also called Ireland several times, but Ireland did not answer or return his calls.  Butler then told Plaintiff that she was mandating that he stay for the 12:00 a.m. to 10:00 a.m. shift.  During these events, Butler was the on-call supervisor and responsible for ensuring coverage at each of the six houses she oversees. If she cannot find coverage, she is responsible for covering the shift.
>
> At 11:18 p.m., Plaintiff texted Butler to inform her that he would wait until 12:15 a.m. for coverage to arrive and would text her at that time if coverage did not arrive. At 11:28 p.m., Butler texted Plaintiff that if he leaves his clients alone, AMP is required to call the police and he would be terminated.  Butler arranged for an individual to relieve Plaintiff and followed up with Plaintiff at 11:40 p.m. indicating that his relief was coming from New Kensington but would not arrive until 12:30 a.m.  At 12:15 p.m. Plaintiff texted Butler that coverage had not arrived.  Plaintiff left the Site at 12:15 a.m.  His replacement arrived at 12:17 a.m.

AMP issued a termination letter to Plaintiff dated Monday, February 26, 2024, citing neglect under state regulations because he left two intellectually disabled adult individuals alone.

(ECF No. 41 at 9-11).

### III.   APPLICABLE LEGAL STANDARD

Evidence is "relevant" if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. And relevant evidence is admissible unless the Constitution, a federal statute, another Rule of Evidence, or another rule of the Supreme Court provides otherwise. Fed. R. Evid. 402. Moreover, the "definition of relevant evidence is very broad." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d at 215, 232 (3d Cir. 2004). "Because the rule makes evidence relevant 'if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact.'" *Blancha v. Raymark Industries*, 972 F.2d 507, 514 (3d Cir. 1992) (quoting 22 Charles A. Wright & Kenneth W. Graham, r., *Federal Practice and Procedure*: Evidence § 5166, at 74 n.47 (1978)).

A court may, however, "exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury …" Fed. R. Evid. 403. Evidence is "unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980). The regard for potential prejudice is tempered by the observation that "probative evidence of discriminatory intent will necessarily prejudice the defendant's case. . . . [T]he question is whether it will do so unfairly." *Pleasants v. Allbaugh*, 285 F. Supp. 2d 53, 55 (D.D.C. 2003); *see also* Advisory Committee Note, Fed. R. Evid. 403 (1972) ("A great deal of evidence is prejudicial to one side or the other. . . . 'Unfair prejudice' means 'an undue tendency

to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'").

As further noted by the Advisory Committee, "[t]he question is whether the probative value of the

evidence is *substantially outweighed* by the danger of unfair prejudice."  *Id.* (emphasis added).

## IV.    DISCUSSION

### A.    Plaintiff's Motions in Limine

1.  Plaintiff's Motion in Limine to Exclude Reference to Plaintiff's Withdrawn Claim of Retaliation in Violation of the Adult Protective Services Act ("APSA") (ECF No. 68).

Plaintiff seeks to exclude Defendant's attempt at trial to reference Plaintiff's withdrawn

claim of retaliation in violation of the Adult Protective Services Act ("APSA"), and any reference

showing that Plaintiff made post-termination complaints to the Pennsylvania Department of Health

about Defendant's alleged abuse of residents.  He contends that such evidence is irrelevant and

will only confuse the jury.  (ECF No. 68).  Defendant responds that such evidence is necessary to

present a comprehensive picture of the facts for the jury's evaluation of Plaintiff's claims. (ECF

No. 78).

At oral argument, Plaintiff's Counsel emphasized that Plaintiff is not claiming he was

terminated because he made these reports to the Department of Health and so they are irrelevant

to the trial of this action.  (ECF No. 85 at 5-6).  He adds that if such evidence were to come in, it

would be extremely prejudicial in that the jury may conclude that Plaintiff's other claims are also

without merit and that Plaintiff is a litigious individual.  (*Id.*)  AMP's Counsel argued that

Plaintiff's Complaint makes much of the fact that he had become vocal in his last month of

employment and shared with AMP's management that he believed there were significant problems

at AMP, including issues with understaffing and documentation, among others, and therefore,

these complaints go directly to Plaintiff's credibility, and not to direct reports to any state agency.

According to AMP, without such evidence, the jury would hear an incomplete set of facts. (*Id.* at 7-9).

The Court agrees with Plaintiff that his post-termination complaints to the Department of Health are not relevant to any issues in the case and that the probative value of introducing these reports is substantially outweighed by a danger of unfair prejudice to the Plaintiff, conveying a message to the jury that he is highly vindictive and a "complainer."  In effect, with the withdrawal of his claim under the APSA, Plaintiff has effectively amended his Complaint which makes any evidence related to reports to the Department of Health, the State, or any other entity, entirely irrelevant.  *See Snyder v. Pascack Valley Hosp.*, 303 F3d 271,276 (3d Cir. 2002) ("An amended complaint supersedes the original version in providing the blueprint for the future course of a lawsuit.").  As such, and as clarified by Plaintiff at the conclusion of the hearing, all complaints whether made post-termination or during his employment concerning abuse and neglect at AMP, are no longer relevant to any remaining claim for trial and will be excluded.  *See* ECF No. 85 at 36-37.

Accordingly, the Court will grant Plaintiff's Motion in Limine to Exclude Reference to Plaintiff's Withdrawn APSA claim and any other evidence concerning Plaintiff's complaints about abuse and neglect while employed by AMP.

> 2.  Plaintiff's Motion in Limine to Exclude Reference to Allegations, EEOC Charges, and/or Lawsuits Against Other Entities (ECF No. 69).

Next, Plaintiff seeks to exclude evidence relating to EEOC charges, other lawsuits filed against other entities, and that Plaintiff was separated from employment from another entity.  (ECF No. 69). Plaintiff submits that this evidence is entirely irrelevant to the case at bar.  It involved unrelated employers and he is not alleging that anything that happened at AMP was in any way related to what happened at his previous employer.  (ECF No.69 at 2-3, 4-5).  Plaintiff further

6

argues that such evidence would be extremely prejudicial in that a jury will likely conclude that Plaintiff is a "serial plaintiff." (*Id.* at 5). Again, Defendant responds that such evidence is necessary for the jury's proper evaluation of Plaintiff's claims and bears directly on his credibility and motive and is therefore admissible for permissible purposes pursuant to Federal Rule of Evidence 404(b). (ECF No. 77 at 4). AMP also emphasizes that such evidence is proper impeachment evidence as it demonstrates how Plaintiff's narrative has developed over time which necessarily relates to his credibility. (*Id.* at 5).

At the outset, the parties agreed at oral argument that any reference to EEOC proceedings in this case or any other should be excluded. (ECF No. 85 at 12-13). To this end, the Court entered an Order excluding this evidence from trial. (ECF No. 82).

As to any mention of Plaintiff's lawsuit with The Honorable W. Scott Hardy in the Western District of Pennsylvania at Civil Action No. 2:24-451, Plaintiff argued at the hearing that this lawsuit is against a different employer, has nothing to do with AMP, and therefore has no relevancy to the case at bar, and that any probative value is substantially outweighed by undue prejudice to the Plaintiff. (ECF No. 85 at 10). Defendant's counsel responded that he wants the opportunity to mention the overlap between the two cases and to use this evidence to impeach Plaintiff's credibility, which AMP contends is a central issue in the case. (*Id.* at 13). Defendant suggested a limiting instruction so that the evidence may be used for impeachment purposes. (*Id.* at 14). Plaintiff insisted, however, that a limiting instruction will not remedy the prejudice because there is no relevant factual overlap. (*Id.* at 15).

The Court finds that pursuant to Rule 403, any probative value of this evidence is substantially outweighed by the possibility of confusing the issues and misleading the jury such that their understanding of the evidence's significance would require a "mini-trial." The Court

7

agrees with Plaintiff that a limiting instruction will not remedy the prejudice to Plaintiff if evidence of his other lawsuit is admitted.  This prejudice includes confusing the jury and their prejudicial conclusion that Plaintiff is a litigious individual.  *See Allen v. Peake*, No. 08cv1055, 2009 WL 1362635, at *1 (W.D. Pa. May 14, 2009) (evidence of plaintiff's previous whistle blower claim and Merit Selection Protection Board litigation excluded as not relevant to plaintiff's Title VII retaliation claims); *Moore v. University of Pittsburgh*, Civil Action No. 02-1734, 2005 WL 8165154, at **1-2 (W.D. Pa. March 11, 2005) (evidence of prior litigation excluded as unduly prejudicial because of possibility that jury will decide case on evidence not before it).

To this end, Plaintiff's Motion in Limine to Exclude Evidence of Plaintiff's Lawsuits against any other entities and that Plaintiff was separated from employment from another entity will be granted.

### B.      Defendant's Motions in Limine

    1.  Defendant's Motion in Limine to Exclude Evidence of Tarashae Butler's Personal Conduct (ECF No. 71).

AMP moves to exclude evidence of Butler's personal conduct including her alleged intoxication, interpersonal and workplace disputes, and alleged conduct toward clients, arguing that this personal conduct is unrelated to Plaintiff, his employment, or AMP's decision-making. (ECF No. 71 at 3). Plaintiff responds that such evidence is extremely relevant as it relates to the elements of Plaintiff's claims, including pretext.  (ECF No. 80 at 4-6).

At oral argument, Defendant contended that the introduction of evidence such as Butler's alleged intoxication, interpersonal conflicts, and her treatment of AMP's clients is irrelevant because there is no evidence that AMP's decisionmakers relied on Butler's conduct when terminating Plaintiff, and because she is not a viable comparator. (ECF No. 85 at 18-19).  Plaintiff counters that this evidence is highly relevant because it shows that AMP failed to take prompt

remedial action when it learned of Butler's inappropriate workplace conduct, and that record evidence reflects that AMP had notice of her behavior as reported by Plaintiff and other AMP employees. (*Id.* at 21-22).  Plaintiff added that Butler's workplace conduct goes to establishing pretext via comparator evidence and that she is, in fact, an appropriate comparator.  (*Id.* at 22-23). Specifically, Plaintiff asserts that AMP didn't follow policy as to Butler, but as it concerns Plaintiff, AMP contends that it was following policy as its legitimate business reason for his termination.  (*Id.* at 23).

The Court agrees with Plaintiff.  Evidence of Butler's workplace conduct is highly relevant as it relates to pretext/comparator evidence.  Specifically, Butler's many infractions of company policy, including theft of client's money, coming to work drunk and other abuses of residents did not result in her termination.  (ECF No. 41 at 18). Yet even though Plaintiff was held in high regard such that he was awarded employee of the month (*id.* at 5), he was terminated for his one infraction of leaving residents alone for two minutes.  The relevancy of this evidence to the key issues in the case far outweighs any prejudice to AMP.

Accordingly, the Court finds that the challenged evidence clearly meets the threshold of relevance and Defendant has failed to show its probative value is substantially outweighed by the danger of unfair prejudice or of confusing or misleading the jury.  *See* Fed. R. Evid. 401(a) & 403. Defendant's Motion in Limine to Exclude Evidence of Tarashae Butler's Personal Conduct will therefore be denied.

> 2.  Defendant's Motion in Limine to Exclude Evidence of Butler's Sexual Conduct with Third Parties (ECF No. 72).

Similarly, AMP seeks to exclude evidence of Butler's sexual conduct with third parties, including sexual relationships, alleged flirtations or sexually suggestive discussions or references to her sexual behavior, arguing that it is irrelevant as it does not concern Plaintiff.  (ECF No. 72 at

9

6).  Plaintiff responds that evidence of an employer's culture may provide circumstantial evidence of discrimination such that its asserted legitimate reasons for termination were merely pretext. (ECF No. 79 at 4-5).  Plaintiff further argues that this evidence provides compelling comparator evidence because although Butler violated company policy and abused residents, she was not terminated as was Plaintiff for allegedly violating policy in abandoning a client for two (2) minutes while they slept.  (*Id.* at 6).

At oral argument, Plaintiff emphasized that such evidence was relevant to Plaintiff's sexual harassment claim because a jury could infer that Butler was attempting to control Boodoo "and have him under her thumb" for her own benefit.  (ECF No. 85 at 31).  Defendant argued that it is irrelevant that Butler had sexual intercourse with other employees, turning the trial into a referendum on Butler's character, again engendering "a trial within a trial," and evoking an emotional reaction. (*Id.* at 28-29). Defendant concedes that any evidence related to Boodoo is relevant, but evidence as to third parties is not.  (*Id.* at 29).

The Court agrees that evidence of Butler's sexual conduct with third parties that was tolerated by AMP goes directly to Plaintiff's claims of sexual harassment, and as evidence of pretext.  That is, evidence of an employer's culture may provide circumstantial evidence of discrimination.  *See Antol v. Perry*, 82 F.3d 1291, 1302 (3d Cir. 1996) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 546 (3d Cir. 1992) ("'proof of a discriminatory atmosphere may be relevant in proving pretext since such evidence does tend to add color to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.'")).  This highly relevant evidence is not substantially outweighed by any prejudice to Defendant.

Again, the Court finds that the challenged evidence clearly meets the threshold of relevance and Defendant has failed to show its probative value is substantially outweighed by the danger of unfair prejudice or of confusing or misleading the jury. *See* Fed. R. Evid. 401(a) & 403. Defendant's Motion in Limine will therefore be denied. An appropriate Order follows below.

**ORDER**

AND NOW, this 11th day of May 2026, for the reasons discussed above,

IT IS HEREBY ORDERED that Plaintiff's Motion in Limine to Exclude Reference to Plaintiff's Withdrawn Claim of Retaliation in Violation of the Adult Protective Services Act ("APSA") (ECF No. 68) is GRANTED. All evidence, including testimony, documents and argument as to Plaintiff's complaints concerning AMP's neglect or abuse of residents during or after his employment shall be excluded from the trial of this civil action.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Reference to Allegations, EEOC Charges, and/or Lawsuits Against Other Entities (ECF No. 69) is GRANTED. All evidence, including testimony, documents and argument relating to Plaintiff's other lawsuits or Plaintiff's termination from another entity shall be excluded from the trial.

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Exclude Evidence of Tarashae Butler's Personal Conduct (ECF No. 71) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Exclude Evidence of Butler's Sexual Conduct with Third Parties (ECF No. 72) is DENIED.

11

FINALLY, IT IS ORDERED that counsel for the parties shall meet and confer and file a Joint Status Report by **May 18, 2026**, advising if they agree to (a) refer this matter back to ADR; (b) request judicial settlement assistance in the form of a conference with the below-signed Judge, or (c) continue to meet and confer toward settlement between themselves.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. Senior District Judge

cc/ecf: All counsel of record